IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

THOMAS W. ZACH,

                Plaintiff,

  v.

SCOTT HETH, ROBERT SCHENCK, TROY
HERMANS, SECURITY GUARD HANSEN, R.N.         OPINION and ORDER
GRAY, SECURITY GUARD TRAAS, SECURITY
GUARD KOHLOFF, MS. JACKIE, ANN KRUEGER,         17-cv-693-jdp
WELCOME ROSE, CHARLES COLE, CHARLES
FACKTOR, KAREN GOURLIE, MS. CHRISTIAN,
BECKY RASMUSSEN, and at least one JOHN DOE
AND JANE DOE,

                Defendants.

---

Plaintiff Thomas W. Zach, a former Wisconsin Department of Corrections inmate appearing pro se, filed this lawsuit about prison officials retaliating against him in various ways while he was incarcerated. I dismissed Zach's original complaint because his allegations violated Federal Rules of Civil Procedure 8 and 20: he did not explain how each of his claims belonged in the same lawsuit and how each defendant was involved in violating his rights. *See* Dkt. 4, at 2.

In particular, Zach brought claims generally fitting into two categories: (1) prison officials withdrew money from his prison account even though his sentencing court did not order such withdrawals; and (2) prison officials forced him to sleep on an unsafe upper bunk even though he had limited mobility after a back injury, and he fell and injured himself. *Id.* But it was not clear how the two sets of events could fit together as one series of transactions under Rule 20. Zach alleges that all of the events were the result of prison officials' organized effort to retaliate against him for filing previous lawsuits. *Id.* at 3. But his allegations came

nowhere close to showing how he knew that all of the defendants joined in a conspiracy against him. And even aside from the Rule 20 problems, Zach did not explain what each individual defendant did to violate his rights; instead he generally listed the names of several defendants and alleged vaguely that they all harmed him. *Id.* at 3–4.

Zach has filed an amended complaint, Dkt. 7, that fixes some of the problems in his original complaint. In particular, he no longer attempts to bring claims about the withdrawal of money from his prison accounts, so that potential Rule 20 problem has been eliminated. There are still significant problems with portions of the amended complaint: he has expanded his complaint to 66 single-spaced pages with long numbered paragraphs, many of which would be impossible for defendants to answer coherently because he continues to often refer to large groups of defendants acting in concert rather than explain what each individual defendant did to violate his rights. Or he vaguely alleges that a "defendant" or "defendants" harmed him in some way, but he does not identify which particular defendants harmed him. I will disregard the portions of the complaint that do not comply with Federal Rule of Civil Procedure 8 by containing short and plain statements of his claims.

Zach also continues to attempt to tie all the events together by saying that they are part of a conspiracy among all of the defendants to retaliate against him for filing grievances. But as with his original complaint in this case and his complaints in other recent cases before this court, he appears to assume that because he was treated badly by several defendants, all of them must have been acting together, and that the conspiracy must be rooted in his grievance history. With one exception discussed below, I will not consider his retaliation claims because he does not present allegations plausibly showing that defendants acted the way they did to punish him for filing grievances. If Zach were to seek further amendment of his complaint to

2

state retaliation claims, he would have to allege specifically how he knew that each alleged harmful act was done for the purpose of retaliating against First Amendment-protected conduct of his.

But there are sections of his complaint that do comply with my instructions to him about providing allegations that hang together as a story explaining what individuals did to violate his rights. *See* Dkt. 7, at 27–32; 43–50. Most of those portions of the complaint are answerable and do state claims under at least some of the theories that Zach asserts. So I will screen those portions of the complaint under the same standards that I screened his original complaint.[1] Under 28 U.S.C. §§ 1915 and 1915A, I must dismiss any portion of complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for monetary damages from a defendant who by law cannot be sued for money damages. In screening a pro se litigant's complaint, I must read the allegations of the complaint generously, *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam), and accept Zach's allegations as true, *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 463 (7th Cir. 2010).

This case is about Zach's time at the Oregon Correctional Center, from August 18 to December 27, 2011. I take Zach to be saying that he had a bad back that was susceptible to injury, yet defendants Officer Scott Heth, Ms. Jackie, Becky Rasmussen, and John Doe (who I will refer to as Doe No. 1) forced him to take physically demanding prison jobs despite knowing that he could get injured, or on some occasions, knowing that he was already injured. They

---

[1] I will consider the introductory "jurisdiction" section of the complaint and pages 27 to 32 and 43 to 50 to be the operative portion of plaintiff's complaint. I will strike the rest of the complaint, and defendants need not answer those other portions.

3

threatened to send Zach to segregation unless he took those jobs. This resulted in Zach suffering three painful and debilitating severe lumbar strains.

The Eighth Amendment prohibits prison officials from acting with deliberate indifference to prisoners' serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). A "serious medical need" is a condition that a doctor has recognized as needing treatment or one for which the necessity of treatment would be obvious to a lay person. *Johnson v. Snyder*, 444 F.3d 579, 584–85 (7th Cir. 2006). A medical need is serious if it is life-threatening, carries risks of permanent serious impairment if left untreated, results in needless pain and suffering, significantly affects an individual's daily activities, *Gutierrez v. Peters*, 111 F.3d 1364, 1371–73 (7th Cir. 1997), or otherwise subjects the prisoner to a substantial risk of serious harm. *Farmer*, 511 U.S. at 847. To be considered "deliberately indifferent," an official must know of and disregard "an excessive risk to an inmate's health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Snipes v. Detella*, 95 F.3d 586, 590 (7th Cir. 1996). However, inadvertent error, negligence, gross negligence, and ordinary malpractice are not cruel and unusual punishment within the meaning of the Eighth Amendment. *Vance v. Peters*, 97 F.3d 987, 992 (7th Cir. 1996).

I will allow Zach to proceed on Eighth Amendment claims against Heth, Ms. Jackie, Rasmussen, and Doe No. 1 because he alleges that they knew that they were subjecting him to a serious risk of harm because he was physically unable to perform particular prison jobs, yet they forced him to take the jobs anyway.

On October 3, 2011, Zach injured his back harvesting vegetables. He was called to the work-release office, where defendants Heth and Officer Hansen saw that he was in extreme

4

distress, writhing in pain, but they did nothing to help him. Instead, they threatened to place him in segregation for refusing work. Zach was in such extreme physical and emotional distress that he lost control of his bladder. Eventually they let him walk to the nurse, but only after he suffered considerably. Almost immediately, a John Doe officer (who I will refer to as Doe No. 2) forced Zach to move to an upper bunk without a ladder or safety restraining bar, despite Zach's injuries. The officer told him that Heth and Hansen ordered the assignment to harm him. Zach also says that defendant Officer Kohloff saw Doe No. 2 take him to the upper bunk with his injuries, and yet did not intervene.

I conclude that Zach states Eighth Amendment claims against Heth and Hansen for delaying in letting Zach get medical care, and Eighth Amendment claims against Heth, Hansen, Doe No. 2, and Kohloff for placing him in an upper bunk despite knowing the danger he faced given his physical disability, or for failing to intervene to stop the assignment.

Zach fell off the bunk on October 15, 2011. Zach says that he suffered "substantial" injuries to his face, neck, back, and right arm. But officials waited eight hours to take him to the emergency room. At one point in his complaint, Zach says that "all defendants" denied his request for medical attention, but is not a plausible allegation given the sheer number of officials he has named as defendants. Elsewhere in his complaint he alleges that defendant nurses Gray and Jane Doe delayed in getting him proper care, giving him only Tylenol. Dkt. 7, at 11, so I will allow him to proceed on Eighth Amendment claims against Gray and Jane Doe.

By this point, Zach was suffering severe psychological distress because of the mistreatment he continued to receive from prison officials. But when he requested a psychological appointment, a nurse told defendants Hansen, Officer Troy Hermans, and Officer Robert Schenck, who rejected Zach's request. I take Zach to be saying that Hermans

5

and Schenck were the acting supervisors at the Oregon facility, but that nonetheless, neither they nor Hansen were medical officials who would ordinarily have the power to deny requests for medical help. So I will allow him to proceed on Eighth Amendment claims against these officials for interfering with his medical care.

Zach says that by the time he left the Oregon facility, he had eight inmate grievances still outstanding, and that various "corrections complaint examiners" waited until four months after he was released to issue their final rulings. But mishandling of grievances by officials who were not part of the underlying violations does not support a due process claim, *see Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011), and Zach does not provide nearly enough information about his grievances to tell whether any defendant could be considered culpable for failing to intervene to stop the constitutional deprivations he complained about. So I will not allow him to proceed on claims regarding the late grievance decisions.

Zach also alleges that one of the complaint examiners, defendant Welcome Rose, sent copies of the grievance materials to Zach's probation agent, which caused the agent to place Zach on "high-risk supervision." For now, I will assume that these records are meant to be confidential, even from an inmate's probation agent. Zach believes that Rose meant to retaliate against him for complaining about his problems by purposely sending those grievance materials on to his probation agent, knowing that it would cause the agent to rethink his supervision status. I take Zach to be saying that the sharing of this confidential information also caused him great embarrassment and emotional and physical distress.

To state a First Amendment retaliation claim, a plaintiff must show that: (1) he engaged in activity protected by the First Amendment; (2) the defendant took actions that would deter a person of "ordinary firmness" from engaging in the protected activity; and (3) the First

6

Amendment activity was at least a "motivating factor" in the defendant's decision to take those actions. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). Zach has a First Amendment right to file legitimate grievances, and I conclude that he has raised plausible inferences that the consequences of Rose's disclosures would cause someone to think twice about filing grievances in the future and that Rose disclosed the information to harm Zach for filing his grievances. At summary judgment or trial, Zach will have to provide evidence showing that those inferences are the correct ones to draw.

I take Zach to be attempting to bring claims against each of the defendants discussed above under Wisconsin law for the intentional infliction of emotional distress. To maintain a claim for intentional infliction of emotional distress, a plaintiff must establish: (1) that the defendant's conduct was intended to cause emotional distress; (2) that the defendant's conduct was extreme and outrageous; (3) that the defendant's conduct was a cause-in-fact of the plaintiff's emotional distress; and (4) that the plaintiff suffered an extreme disabling emotional response to the defendant's conduct. *Rabideau v. City of Racine*, 2001 WI 57, ¶ 33, 243 Wis. 2d 486, 627 N.W.2d 795 (citing *Alsteen v. Gehl*, 21 Wis. 2d 349, 359–60, 124 N.W.2d 312 (1963)).

I will allow Zach to proceed on an intentional-infliction-of-emotional-distress theory against each of the defendants who Zach already states claims against above. He alleges that each defendant had a hand in subjecting him to injuries that caused him severe pain and emotional distress, and that the defendants knew that their actions could cause that harm.

I will hold off on having defendants answer the complaint until Zach confirms that he intends to proceed with this lawsuit. Zach recently voluntarily dismissed cases 16-cv-442-jdp and 16-cv-823-jdp because I would not stay or transfer his cases or recruit him counsel. It is

7

unclear whether he would like to dismiss this case too, so I will give him a short time to respond to this order by explaining whether he would like to proceed with the case or dismiss it. If he chooses to proceed with the case, his next steps will be to use discovery methods to get information about his claims from the defendants, and, if he chooses, to amend his complaint to better explain the large sections of his complaint that I am not considering in this order because of the pleading problems discussed above.

Zach should be aware that, unless his circumstances change significantly, I do not intend to recruit him counsel, for the reasons discussed in my orders in his previous cases. I remain open to entertaining the extension of court deadlines if Zach encounters health-based impediments to producing written documents or appearing in court.

ORDER

IT IS ORDERED that:

1. Plaintiff Thomas W. Zach is GRANTED leave to proceed on the following claims:

   - Eighth Amendment and Wisconsin-law claims for intentional infliction of emotional distress against defendants Scott Heth, Ms. Jackie, Becky Rasmussen, Officer Kohloff, Nurse Gray, Officer Hansen, Officer Hermans, Officer Schenck, John Does No. 1 and 2, and Nurse Jane Doe.

   - First Amendment retaliation and Wisconsin-law claims for intentional infliction of emotional distress against defendant Welcome Rose.

2. Defendants Officer Traas, Ann Krueger, Charles Cole, Charles Facktor, Karen Gourlie, and Ms. Christian are DISMISSED from the case.

3. Service of the complaint is STAYED. Plaintiff may have until March 19, 2019, to respond to this order, stating whether he intends to proceed with the case or dismiss it.

4. Portions of the complaint are STRUCK as discussed in the opinion above. Defendants need answer only the introductory "jurisdiction" section of the complaint and pages 27 to 32 and 43 to 50.

Entered March 5, 2019.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge